IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CONCILIO FUENTE DE AGUA VIVA, INC.<br><br>**Plaintiff**<br><br>v.<br><br>EDWIN LEMUEL ORTIZ-HERNÁNDEZ, MARIA DEL CARMEN ARROYO PANTOJAS, ET AL.<br><br>**Defendants** | **Civil No. 22-1206 (RAM)** |

OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, United States District Judge.

Pending before the Court is Co-defendant Edwin Lemuel Ortiz-Hernández's ("Ortiz-Hernández") *Motion to Dismiss* pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6). (Docket No. 11). Ortiz-Hernández alternatively requests a change of venue in the event that the Court denies his *Motion to Dismiss*. Id. at 7-8. Also pending before the Court is Plaintiff Concilio Misión Cristiana Fuente de Agua Viva, Inc.'s ("CMCFAV" or "Plaintiff") motion to remand the case to state court ("*Motion to Remand*"). (Docket No. 13). Having reviewed the parties' submissions in support of and opposition to each motion, the Court **DENIES** Ortiz-Hernández's *Motion to Dismiss* and request for a change of venue and **DENIES** CMCFAV's *Motion to Remand*.

## I. PROCEDURAL BACKGROUND

On March 3, 2022, CMCFAV filed its *Complaint* with the Court of First Instance of the Commonwealth of Puerto Rico, San Juan Superior Part, against Ortiz-Hernández, his wife Maria del Carmen Arroyo-Pantojas, and their conjugal partnership (collectively, "Defendants"). (Docket No. 7-1). The *Complaint* avers two claims against Defendants: (1) breach of contract; and (2) collection of monies. Id. CMCFAV alleges that on December 13, 1999, it "made a three-million-dollar written loan to the defendant Edwin Lemuel Ortiz Hernández, his wife María del Carmen Arroyo Pantojas, and their community property[,]" of which Defendants still owe $1.313 million. Id.

On May 5, 2022, Ortiz-Hernández filed a *Notice of Removal* to this Court pursuant to 20 U.S.C. § 1332. (Docket No. 1). He asserts this Court may exercise diversity jurisdiction over Plaintiff's claims because Plaintiff seeks relief in excess of $75,000, Plaintiff is organized under the laws of Puerto Rico and has a Puerto Rico address, and Defendants are citizens of Florida. (Docket Nos. 1 and 7-1).

On June 22, 2022, Ortiz-Hernández filed the present *Motion to Dismiss* pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6). (Docket No. 11). He argues that this Court cannot exercise personal jurisdiction over him and that there is no claim against him upon which relief can be granted, as he was not a party to the 1999

loan agreement in his personal capacity. Id. Alternatively, Ortiz-Hernández seeks a change of venue to the United States District Court for the Southern District of Florida. Id. at 7-8.

On July 5, 2022, CMCFAV filed an opposition to Ortiz-Hernández's *Motion to Dismiss* and a request to remand. (Docket No. 13). On July 20, 2022, Ortiz-Hernández filed an opposition to Plaintiff's *Motion to Remand* and a reply with regard to his *Motion to Dismiss*. (Docket Nos. 15 and 16, respectively). On September 14, 2022, Plaintiff filed a sur-reply in relation to the *Motion to Dismiss*. (Docket No. 19).

## II. FACTUAL BACKGROUND

For purposes of adjudicating these motions, the relevant facts alleged in Plaintiff's *Complaint* are as follows. On December 13, 1999, CMCFAV allegedly issued a $3 million loan to Defendants. (Docket No. 7-1 ¶ 4). The alleged 1999 loan agreement includes a forum selection clause designating the courts of San Juan, Puerto Rico to resolve any disputes that may arise from the agreement. Id. ¶ 6. CMCFAV also alleges that Defendants agreed to make monthly payments totaling $3,000 "until its final balance and without legal interest." Id. ¶ 5.

According to Plaintiff, "[o]n November 15, 2010, the litigating parties made a written modification to the loan." Id. ¶ 7. Through this modification, Defendants purportedly "accepted a debt (or balance as of that date) of $1,700,000.00" and "agreed

to make monthly payments of $8,500, without interest, up to its balance." Id. Per the *Complaint*, in January 2013, with CMCFAV's consent, "the defendant began paying the amount of $5,500.00 per month." Id. ¶ 8. Plaintiff alleges that in July 2014, Defendants requested "another modification of $3,000.00 as a monthly payment" because they could no longer pay the $5,500 amount. Id. ¶ 9. Finally, the *Complaint* states that in October 2019, Defendants stopped making monthly payments and that they now owe CMCFAV $1.313 million. Id. ¶¶ 10, 12.

### III. ORTIZ-HERNÁNDEZ'S MOTION TO DISMISS

The Court tackles Ortiz-Hernández's *Motion to Dismiss* and request for a change of venue first, addressing each of his arguments in turn.

#### A. Motion to Dismiss Pursuant to Fed R. Civ. P. 12(b)(2)

Ortiz-Hernández argues that this Court cannot exercise personal jurisdiction over him. He argues that the 1999 agreement is between CMCFAV and the company Genesis Broadcasting Network ("GBN"). (Docket No. 11 at 5-6). Although he concedes that he signed the agreement, Ortiz-Hernández asserts that he did so on behalf of GBN as its president, **not in his personal capacity**. Id. Thus, according to Ortiz-Hernández, that agreement does not allow for the exercise of personal jurisdiction over him as an individual in this case. Id.

CMCFAV maintains that Defendants[1] are in fact personally liable for $1.313 million pursuant to a 1999 loan agreement. Plaintiff provides a 2010 written loan modification in its opposition to Ortiz-Hernández's *Motion to Dismiss*, which allegedly proves that Defendants are personally liable to CMCFAV. (Docket No. 13). Plaintiff also claims that because Defendants agreed to a forum selection clause in the 1999 loan agreement that designates the courts of San Juan, Puerto Rico as an appropriate forum, Defendants waived any arguments against the exercise of personal jurisdiction over them in Puerto Rico. Id.

### 1. The Burden of Proof

The plaintiff has the burden of proving that personal jurisdiction may be exercised over the defendant in the forum state. Kuan Chen v. U.S. Sports Acad., Inc., 956 F.3d 45, 54 (1st Cir. 2020) (citing Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016)). Courts have several ways of determining whether a plaintiff has met its burden. Id. at 51 (citing Baskin-Robbins, 825 F.3d at 34).

The first method is the prima facie approach, whereby the Court determines whether the plaintiff has provided enough facts that, if true, support a finding of personal jurisdiction. Id. (citing Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138,

---

[1] CMCFAV refers to both Defendants in its motions. The Court notes, however, that Ortiz-Hernández's *Notice of Removal* states, "No other Defendant has been properly served." (Docket No. 1 ¶ 10).

145 (1st Cir. 1995)). The plaintiff may not rely on conclusory statements; he must "adduce evidence of specific facts." Id. at 54 (internal quotation marks omitted) (quoting Foster-Miller, 46 F.3d at 145). The prima facie approach is typically used at the beginning of a case. Id. at 51 (citing Foster-Miller, 46 F.3d at 145). Courts may consider the pleadings and any other supplemental filings in the record. Id. at 52 (citing Baskin-Robbins, 825 F.3d at 34). The court "giv[es] credence to the plaintiff's version of genuinely contested facts" but may also rely on undisputed facts put forth by the defendant. Id. (internal quotation marks omitted) (citing Baskin-Robbins, 825 F.3d at 34).

If the court believes that it would be unfair to the defendant to proceed without requiring more than a prima facie showing of personal jurisdiction, it can use a preponderance-of-the-evidence approach or an intermediate approach referred to as the likelihood standard. Id. at 51 (citing Foster-Miller, 46 F.3d at 145-46); Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 677 (1st Cir. 1992). In this case, Ortiz-Hernández does not argue that Plaintiff should be required to make more than a prima facie showing of personal jurisdiction, and no special circumstances indicate that proceeding in this forum would be "unfair in the circumstances[.]" Boit, 967 F.2d at 677-78. Therefore, the Court will proceed under the prima facie approach and simply determine whether Plaintiff

has provided enough facts that, if true, support a finding of personal jurisdiction.

### 2. Analysis

Ortiz-Hernández argues that he is not a party to the 1999 agreement in his personal capacity, so this Court may not exercise personal jurisdiction over him pursuant to said contract and its forum selection clause. (Docket No. 11 at 6). He also notes that the alleged loan agreement, which Plaintiff attaches to its *Complaint*, is a purchase contract in which GBN is the seller, not a contract for a loan obliging him or GBN to pay CMCFAV anything. Id.

While the 1999 agreement on its face supports Ortiz-Hernández's position,[2] the 2010 written loan modification does not. (Docket Nos. 7-1 at 4-6; 13 at 8-10). The latter was signed by both Ortiz-Hernández and his wife and Co-defendant Arroyo-Pantojas. (Docket No. 13 at 8-10). Nowhere therein is GBN mentioned. Id. In fact, each provision of the agreement refers to "pastors Ortiz," which refers to both Ortiz-Hernández and Arroyo-Pantojas. Id. For example, the second paragraph states that "pastors Ortiz recognize that they owe the Council of Mission the adjusted amount of $1,700,000...." Id. The letter also says, "This

---

[2] The alleged 1999 loan agreement appears to be a purchase contract through which Plaintiff CMCFAV bought the rights and permits for the operation of a radio station from GBN for $3 million. Co-defendant Ortiz-Hernández signed the contract on behalf of GBN as its president. (Docket No. 7-1 at 4-6).

agreement will be carried out in a legal manner and the signatures of **Pastors Ortiz and the conjugal partnership** will be before a Notary of the State of Florida." Id. (emphasis added). The letter's subject line is "FOLLOW-UP TO MIAMI RADIO MATTERS GENESIS 90.9 FM" -- the same radio station from the 1999 agreement that Ortiz-Hernández attempts to disassociate himself from.

Furthermore, under the prima facie approach for adjudicating a 12(b)(2) motion, the Court "draw[s] the relevant facts from the pleadings and whatever supplemental filings (such as affidavits) are contained in the record, giving credence to the plaintiff's version of genuinely contested facts." Kuan Chen, 956 F.3d at 52 (internal quotation marks omitted) (citing Baskin-Robbins, 825 F.3d at 34). Plaintiff's *Complaint* clearly alleges that it made Defendants a $3 million written loan that included a forum selection clause for the courts of San Juan, Puerto Rico. (Docket No. 7-1 ¶¶ 4, 6). Thus, for the purposes of this 12(b)(2) motion, the Court must give credence to that allegation.

Parties to a contract "may waive [their] right to challenge personal jurisdiction by consenting to personal jurisdiction in a forum selection clause." Confederate Motors, In. v. Terny, 831 F. Supp. 2d 405, 411 (D. Mass. 2011) (citation and internal quotation marks omitted). A permissive forum selection clause constitutes consent to jurisdiction in the forum contained in the clause. *See* id. (citing Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10,

17 (1st Cir. 2009)). "[I]f one party brings a covered claim in the designated forum, the opposing party has waived its right to object to personal jurisdiction in that forum." Id. (citing Autoridad de Energía Eléctrica de Puerto Rico v. Ericsson Inc., 201 F.3d 15, 18-19 (1st Cir. 2000)). Mandatory forum selection clauses go a step further; they dictate "the exclusive forum for litigation." Rivera v. Kress Stores of Puerto Rico, 30 4.Fth 98, 103 (1st Cir. 2022) (internal quotation marks and citations omitted). Therefore, regardless of its nature, a forum selection clause serves as a waiver of the parties' right to object to the exercise of personal jurisdiction over them in the designated forum.

The forum selection clause at issue here states that the parties select the courts of San Juan, Puerto Rico to resolve any disputes that may arise from the contract. (Docket No. 7-1 ¶ 6). If, as Plaintiff alleges, Defendants are personally bound by the agreement containing that forum selection clause, then Ortiz-Hernández waived his right to object to the exercise of personal jurisdiction over him in this forum. As Plaintiff has met its burden for establishing personal jurisdiction under the prima facie standard, the Court **DENIES** Ortiz-Hernández's *Motion to Dismiss* pursuant to Fed. R. Civ. P. 12(b)(2).

However, the Court stresses that this *Opinion and Order* does not prejudge the issue of personal jurisdiction. The 1999 agreement attached to Plaintiff's *Complaint* casts serious doubt over the

alleged loan arrangement. However, Ortiz-Hernández does not adequately explain why the 2010 written loan modification seemingly acknowledges that Defendants owe Plaintiff a personal debt pursuant to that 1999 agreement. This, coupled with the allegations in Plaintiff's *Complaint*, lead the Court to conclude that Plaintiff has met its present burden under the prima facie standard for showing personal jurisdiction. Should Ortiz-Hernández renew his motion under a more fulsome showing, though, the Court may find that it lacks the authority to exercise personal jurisdiction over him based on the 1999 agreement.

### B. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

Ortiz-Hernández relies on the same argument for his *Motion to Dismiss* pursuant to Fed. R. Civ. P. 12(b)(6) as he does for his *Motion to Dismiss* pursuant to Fed. R. Civ. P 12(b)(2). He argues that there can be no breach of contract or collection of monies claim against him because he is not a party to the 1999 agreement, so the *Complaint* fails to state a claim upon which relief can be granted. (Docket No. 11 at 5-7).

#### 1. Applicable Law

When ruling on a Fed. R. Civ. P. 12(b)(6) motion, "[t]he sole inquiry ... is whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiff[], the complaint states a claim for which relief can be granted." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 7 (1st Cir. 2011). The

Court must first "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted). Then, the Court takes "the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor," to determine "if they plausibly narrate a claim for relief." Id. (citations omitted).

Because the Court exercises diversity jurisdiction in this case, Puerto Rico substantive law applies. *See* BELFOR USA Group, Inc. v. ESJ Resort LLC, 2018 WL 6623006, at *2 n.3 (D.P.R. 2018) (quoting Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 417 (2010)).

Under Puerto Rico law, a breach of contract claim requires three things: (1) a valid contract, (2) a breach of that contract by one of the parties, and (3) damages consequent to that breach. Id. at *2 (citing Markel Am. Ins. Co. v. Diaz-Santiago, 674 F.3d 21, 31 (1st Cir. 2012); R & T Roofing Contractor, Corp. v. Fusco Corp., 265 F. Supp. 3d 145, 154 (D.P.R. 2017)). A valid contract requires consent, object, and cause. Id. (citing P.R. LAWS ANN. tit. 31, § 3391; Soto v. State Indus. Prod., Inc., 642 F.3d 67, 73 (1st Cir. 2011)). "[C]onsent is shown by the concurrence of the offer and acceptance of the thing and the cause which are to constitute the contract." Id. at *3 (internal quotation marks omitted) (citing

P.R. Laws Ann. tit. 31, § 3401). For an acceptance to operate as contractual consent, it must accept the tendered offer in its entirety without modifying it or adding new terms. Id. (citations omitted). Courts presume the validity of a contract and the consent thereof. Id. at *4 (citing Citibank Glob. Markets, Inc. v. Rodriguez Santana, 573 F.3d 17, 24 (1st Cir. 2009)).

For a collection of monies claim under Puerto Rico law, "[p]laintiff need only prove that a valid debt exists, that it has not been paid, that the plaintiff is the creditor and the defendants his debtors." Citibank, N.A. v. R2 Advertising, Inc., 2013 WL 12234280, at *7 (D.P.R. 2013) (internal quotation marks omitted) (quoting Gen. Elec. v. Concessionaires, Inc., 18 P.R. Offic. Trans. 38, 52 (1986)).

### 2. Analysis

Plaintiff alleges that it issued a $3 million loan to Defendants pursuant to a December 13, 1999 loan agreement. (Docket No. 7-1 ¶ 4). It maintains that Defendants agreed to pay CMCFAV $3,000 monthly "until its final balance and without legal interest." Id. ¶ 5. It also contends that there were subsequent loan modifications and provides the dates and modified payment amounts for each of these subsequent agreements in its *Complaint*. Id. ¶¶ 7-9. Finally, Plaintiff specifies that Defendants stopped making the monthly payments in October 2019, despite owing CMCFAV a remaining balance of $1.313 million. Id. ¶¶ 10, 12.

Taking these "well-pled (*i.e.*, non-conclusory, non-speculative) facts as true" and "drawing all reasonable inferences in the pleader's favor," the Court finds that Plaintiff "plausibly narrate[s]" a breach of contract and collection of monies claim under Puerto Rico law upon which relief could be granted. *See* Schatz, 669 F.3d at 55 (citations omitted). Accordingly, the Court **DENIES** Ortiz-Hernández's *Motion to Dismiss* pursuant to Fed. R. Civ. P. 12(b)(6).

### C. Request for a Change of Venue

Ortiz-Hernández alternatively requests a change of venue to the United States District Court for the Southern District of Florida. He argues that the Court should transfer the case for the convenience of the parties and witnesses and in the interest of justice. (Docket No. 11 at 7-8). He points to the fact that Defendants are residents of Miami, Florida and that the property at issue in the 1999 loan agreement is in Homestead, Florida, so any witnesses would be in Florida. Id.

**1. Applicable Law**

"[A] district court may transfer any civil action to any other district where it may have been brought 'for the convenience of parties and witnesses, in the interest of justice.'" Rivera-Carmona v. Am. Airlines, 639 F. Supp. 2d 194, 196-97 (D.P.R. 2009) (citing 28 U.S.C. § 1404(a)). Typically, a court weighs both private-interest factors (*i.e.*, the convenience of the parties)

and public-interest factors. Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas, 571 U.S. 49, 62-63 (2013).

The Supreme Court has identified the following private-interest factors to consider:

> [R]elative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

Id. at 62 n.6 (internal quotation marks omitted) (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 n.6 (1981)). Furthermore, the following are public-interest factors recognized by the Supreme Court: "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." Id. (internal quotation marks omitted) (citing Piper Aircraft, 454 U.S. at 241 n.6). The party seeking transfer has the burden of proof, given the "strong presumption in favor of the plaintiff's choice of forum." Rivera-Carmona, 639 F. Supp. at 197 (citing Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000)).

As relevant here, "[w]hen the parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their

witnesses, or for their pursuit of the litigation." Atl. Marine, 571 U.S. at 64. In that instance, courts "must deem the private-interest factors to weigh entirely in favor of the preselected forum." Id. Thus, in cases involving a forum selection clause, courts may only consider public-interest factors, which rarely defeat a transfer motion. *See* id.

**2. Analysis**

This case involves a forum selection clause. However, the Court has not made a final ruling on its applicability to Ortiz-Hernández. In response to Ortiz-Hernández's *Motion to Dismiss*, the Court has simply determined that at present, Plaintiff has met its burden under the relevant standards for showing personal jurisdiction and a plausible claim. Therefore, the Court will evaluate Ortiz-Hernández's request for a change of venue under both scenarios.

The first scenario is simple. If the forum selection clause binds Ortiz-Hernández, the Court considers only the public-interest factors. Ortiz-Hernández makes no arguments regarding these factors. Given that "[i]n all but the most unusual circumstances . . . the interest of justice is served by holding parties to their bargain[,]" the public-interest factors would weigh against transferring the case to Florida. Atl. Marine, 571 U.S. at 66 (internal quotation marks omitted); *see also* Caribbean Restaurants, LLC v. Burger King Corp., 23 F. Supp. 3d 70, 78

(D.P.R. 2014). Furthermore, as this case involves Puerto Rico law, the interest in having a trial of a diversity case in a forum that is at home with the law weighs against transfer.

Even if the Court were to find that the forum selection clause **does not** bind Ortiz-Hernández, he has not shown how a transfer of this case to the Southern District of Florida would serve "the convenience of parties and witnesses" and "the interest of justice." 28 U.S.C. § 1404(a). Starting with the private-interest factors, the radio station is indeed located in Florida, but Ortiz-Hernández does not discuss why this case may require inspection of the premises. Ortiz-Hernández also suggests that relevant witnesses would be located in Florida but does not list a single potential witness who resides in or near Florida other than Defendants themselves. Meanwhile, Plaintiff CMCFAV is based in Puerto Rico. Even without a forum selection clause, the public-interest factors still weigh against transfer, given that Puerto Rico law governs these claims.

The Court thus finds that regardless of whether the forum selection clause binds Ortiz-Hernández, he has not made a case for transferring this action to the U.S. District Court for the Southern District of Florida. Ortiz-Hernández's request for a change of venue is **DENIED**.

### IV. PLAINTIFF'S MOTION TO REMAND

Lastly, the Court tackles Plaintiff's *Motion to Remand* based on the forum selection clause. (Docket No. 13 at 3). Ortiz-Hernández argues that the *Motion to Remand* is time-barred because "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)." 28 U.S.C. § 1447(c). Ortiz-Hernández filed the *Notice of Removal* on May 5, 2022, but Plaintiff did not file this *Motion to Remand* until July 5, 2022, over 30 days later. (Dockets Nos. 1 and 13, respectively).

However, the term "defect" as used in the statute does not encompass a motion to remand based on a forum selection clause in a contract. *See* Ericsson, 201 F.3d at 17; *see also* Snapper, Inc. v. Redan, 171 F.3d 1249, 1253 (11th Cir. 1999); Foster v. Chesapeake Ins. Co., 933 F.2d 1207, 1213 (3d Cir. 1991). The Court may still consider a motion to remand based on a forum selection clause even after the 30-day period.

Nonetheless, this forum selection clause does not compel remand to state court. First, the parties did not brief whether the courts of San Juan, Puerto Rico include this Court, which is located in San Juan. It is possible the forum selection clause as written designates this Court as an appropriate forum. Second, as discussed *supra* § III, the Court has not prejudged whether Ortiz-

Hernández is personally bound by the 1999 agreement and its forum selection clause. Third, even assuming that the forum selection clause is enforceable against Ortiz-Hernández personally, it still does not compel remand because it is permissive not mandatory. When a forum selection clause is permissive rather than mandatory, courts have discretion on whether to remand the case. *See* Mercado-Salinas v. Bart Enterprises Intern., Ltd., 669 F. Supp. 2d 176, 185 (D.P.R. 2009) (denying a motion to remand a case to state court where the contract at issue included a permissive forum selection clause). Courts have discretion in the case of permissive clauses because "[a] clause that simply consents to the jurisdiction of one court does not by its terms exclude jurisdiction in another court." Ericsson, 201 F.3d at 16; *see also* Redondo Const. Corp. v. Banco Exterior de Espana, S.A., 11 F.3d 3, 6 (1st Cir. 1993).

The forum selection clause at issue here is permissive. The mandatory or permissive nature of a forum selection clause often hinges on whether the provision includes any terms with a mandatory connotation. Examples of terms with a mandatory connotation include "shall," "will," "exclusively," "only," and "must." *See* Claudio-De Leon v. Sistema Universitario Ana G. Mendez, 775 F.3d 41, 46 (1st Cir. 2014); Centro Medico de Turabo, 575 F.3d at 17 n.5; Prestige Cap. Corp. v. Pipeliners of Puerto Rico, Inc., 849 F. Supp. 2d 240, 246 (D.P.R. 2012). The forum selection clause at issue here lacks any mandatory language, therefore it is

permissive. Accordingly, the Court is not compelled to remand the case based on the forum selection clause, and Plaintiff's motion is **DENIED**.

## V.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Ortiz-Hernández's *Motion to Dismiss* and request for a change of venue and **DENIES** Plaintiff's *Motion to Remand*.

**IT IS SO ORDERED.**

In San Juan Puerto Rico, this 27th day of January 2023.

S/ RAÚL M. ARIAS-MARXUACH  
United States District Judge