IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **CONCILIO MISION CRISTIANA FUENTE DE AGUA VIVA, INC.,**<br>    Plaintiff,<br><br>v.<br><br>**EDWIN LEMUEL ORTIZ-HERNANDEZ, et al.,**<br><br>    Defendant. | CIVIL NO.  22-cv-01206 (RAM)<br><br>RE: BREACH OF CONTRACT, DEBT COLLECTION |

## AMENDED COMPLAINT

**TO THE HONORABLE COURT:**

**COMES NOW**, Plaintiff **CONCILIO MISIÓN CRISTIANA FUENTE DE AGUA VIVA, INC.,** through the undersigned legal counsels and respectfully alleges, states and prays:

**I.     THE PARTIES**

1. The plaintiff party, Concilio Misión Cristiana Fuente de Agua Viva, Inc., is a non-stock not for profit corporation religious organization created under the laws of the Commonwealth of Puerto Rico. Its address is 1355 Calle Río Danubio Urb. Industrial, Carolina, P.R., 00982. Phone: (787) 625-5858.

2. The defendant party, Edwin Lemuel Ortiz Hernández, upon information and belief is of legal age, a minister, married to María del Carmen Arroyo Pantojas, under a community of property, and a resident of Miami, Florida. His address is P.O. Box: 820814 South Florida, FL 33082.

3. The defendant party, María del Carmen Arroyo Pantojas, upon information and belief is of legal age, married to the defendant Edwin Lemuel Ortiz Hernández under a community of property, is a minister, a housewife, and a resident of Miami, Florida. Her address is P.O. Box: 820814 South

1

Florida, FL 33082.

4. Complete diversity between Concilio Misión Cristiana Fuente de Agua Viva, Inc. and Defendants exists. The parties have a forum selection clause, where the courts of San Juan, Puerto Rico were chosen to resolve any controversy that may arise.

## II. JURISDICTION AND VENUE

5. Jurisdiction is conferred upon this Court by virtue of 28 U.S.C. sec. 1332. There is complete diversity of citizenship among the parties. The amount in controversy, exclusive of interest and costs, exceeds seventy five thousand dollars ($75,000.00).

6. Venue is proper in this Court pursuant to 28 U.S.C. sec. 1391 due to the fact that substantial part of the events occurred in Puerto Rico and Puerto Rico law governs these claims.

## III. GENERAL ALLEGATIONS

7. The Defendants were members of Defendant, Concilio Fuente de Agua Viva, Inc. between 1999 and September 8, 2006. **Exhibit 1**

8. In 1999 the Defendant, Edwin Lemuel Ortiz-Hernandez approach the leading Pastor at that time, Mr. Rodolfo Font, for money to acquire a FM station in Florida, and to establish a Christian Radio Station.

9. The Defendants are officials and owners of Genesis Broadcasting Network Co. **Exhibit 2**

10. The Defendants, or the Defendants through Genesis Broadcasting Network Co., were in the process of securing financing to acquire the FM Station.

11. On September 27, 1999, the Plaintiff disbursed a check in the amount of $300,000, to Iglesia FAV, as payee for the FM Station owned by Genesis Broadcasting Network Co. **Exhibit 3**

12. On December 13, 1999, in Carolina, Puerto Rico, the Plaintiff and Genesis Broadcasting Network Co., represented by its President Edwin Lemuel Ortiz executed a Purchase and Sale

Agreement for the sale to Plaintiff of Radio Station 90.9 FM.  (hereinafter "1999 Purchase and Sale") **Exhibit 4**

13. As of the execution of the 1999 Purchase and Sale Station 90.9 FM – Homestead, FLA. the FCC approval was pending for the transfer of the Radio Station 90.9 FM, such document was never received by the Plaintiff.

14. As part of the execution of the 1999 Purchase and Sale, Plaintiff issued a check number 4257 to Edwin Lemuel Ortiz, as payee, in the Amount of $350,000.00. **Exhibit 3**

15. Even though the 1999 Purchase and Sale was executed between corporations the check was delivered and paid personally to Defendant Edwin Lemuel Ortiz.

16. The 1999 Purchase and Sale included in its paragraph 6, that if the Plaintiff ever decided to sell its rights over the FM Radio Station, the first option would be given to the defendant Edwin Lemuel Ortiz Hernandez, in his personal capacity.

17. On June 22, 2000, the Plaintiff disbursed a check 4575 in the amount of $100,000, to Defendant Edwin Lemuel Ortiz as payee. **Exhibit 3**

18. On October 6, 2000, the Plaintiff transferred and disbursed the amount of $300,000, to Suntrust Bank Miami as payee for the acquisition of the real estate necessary for the construction of the FM Radio Station. **Exhibit 3**

19. On February 15, 2001, the Plaintiff disbursed a check 4882 in the amount of $15,000, to Defendant Edwin Lemuel Ortiz, as payee. **Exhibit 3**

20. On March 26, 2001, the Plaintiff disbursed a check 4975 in the amount of $75,000, to Defendant Edwin Lemuel Ortiz, as payee. **Exhibit 3**

21. On October 2, 2001, the Plaintiff disbursed a check 5207 in the amount of $75,000, to Defendant Edwin Lemuel Ortiz, as payee. **Exhibit 3**

22. On April 16, 2002, the Plaintiff disbursed a check 5435 in the amount of $50,000, to Defendant Edwin Lemuel Ortiz, as payee. **Exhibit 3**

23. On May 22, 2003, the Plaintiff disbursed a check 567 in the amount of $250,000, to Defendant Edwin Lemuel Ortiz, as payee. **Exhibit 3**

24. On June 10, 2003, the Plaintiff disbursed a check 585 in the amount of $50,000, to Defendant Edwin Lemuel Ortiz, as payee. **Exhibit 3**

25. On November 17, 2003, the Plaintiff disbursed a check 825 in the amount of $50,000, to Defendant Edwin Lemuel Ortiz, as payee. **Exhibit 3**

26. Plaintiff agreed to advance the monies required by the Defendants expecting to be reimbursed by Defendant once the financing was approved.

> "On the occasion of the preliminary agreement to purchase the interests of the Fuente de Agua Viva Council in Genesis Broadcasting Network, *it was decided to conduct efforts to seek financing for the repayment of the Council's investment*, as agreed in previous meetings with the members at the meeting of the Council of Fuente de Agua Viva." **Exhibit 5** (emphasis supplied)

27. The monies borrowed by the Defendants from the Plaintiff, did not accumulate interest.

28. On July 8, 2006 in a meeting of Genesis Broadcasting Network, in the absence of Otoniel Font and Ricky Rosado, the corporation resolved that,

> "That **Mr. President will be personally responsible for any credit note, loan, mortgage, or line of credit that is obtained.** And that it respond for fairly allocating the funds that are achieved to GBNC, product of this consortium **to be able to comply with the debt contracted with the Fuente de Agua Viva Council of P.R [Concilio de Agua Viva de Puerto Rico]."** **Exhibit 6** (emphasis supplied)

29. On September 8, 2006, when the Defendants withdrew as Pastors from Plaintiff, he requested to Plaintiff to retain and keep the FM Radio Station, in its pertinent part they, reinforced their position,

> "**The matters pending related to the radio station WGES FM will continue as agreed in separate conversations and agreements.**" **Exhibit 1**

4

30. After four years of negotiations, on November 15, 2010 the Defendants and the Plaintiff executed an agreement establishing the payment plan of $2,100,000, which was the correct amount disbursed for the acquisition of the FM Radio Station, the amounts disbursed never reached $3,000,000 as originally contemplated. (hereinafter "Reimbursement Agreement and Recognition of Debt") **Exhibit 4**

31. The Reimbursement Agreement and Recognition of Debt is a modification of the 1999 Purchase and Sale.

32.  During four years of negotiations, the parties became aware that Defendant Edwin Lemuel Ortiz as President and owner of Genesis Broadcasting Network Corporation, never transferred the FM Radio Station to the Plaintiff in clear violation of FCC regulation.

33. Genesis Broadcasting Network Corporation, never transferred the FM Radio Station to the Plaintiff as established in 1999 Purchase and Sale.

34. Between 1999 and 2010 the corporation Genesis Broadcasting Network Corporation had included as its officers and directors Luis Rosado, and Otoniel Font, who were also members of Plaintiff.  **Exhibit 2**

35. In September 15, 2011 the officers and Directors of Genesis Broadcasting Network Corporation were changed to the following. **Exhibit 2**:

   a.  Edwin L. Ortiz-Hernandez

   b. Gamaliel Ortiz- Arroyo

   c. Maria del C. Arroyo-Pantoja

   d. Mauricio C. Quintana

   e. Alfonso Cordero

   f. Carlos Ferreira

36. The payments received by Plaintiff from the Defendants were:

    a. 21 payments of $8,500;

    b. 1 payment of $25,500;

    c. 1 payment of $6,000;

    d. 12 payments of $5,500;

    e. 1 payment of $5.000;

    f. 1 payment of $3,500;

    g. 32 payments of $3,000; and

    h. 6 payments of $1,000.

Which add to $386,500.00.

37. Because the first option was not fulfilled by the Defendants, specifically paragraph 26 of this Amended Complaint, the Plaintiff provided a repayment plan to the Defendants.

38. The repayment plan was approved and executed by both parties in Reimbursement Agreement and Recognition of Debt. **Exhibit 7**

39. On August 2010 Plaintiff sent draft of the document to be executed. **Exhibit 8**

40. On November 19, 2010 Defendant Edwin Lemuel Ortiz Hernandez acknowledged the receipt of the draft and requested changes:

    > "1. That the Ortiz pastors or the entity they administer recognizes in favor of the Christian Council or Mission Fuente de Agua Viva participation in a 50/50 partnership ratio in the license of the station that it has at the moment as investment guarantee, until the debt owed to the Council is paid off. Once the final payment has been made, the Council will release its license before the FCC.
    > **At this point, as I told Pastor Robert Gomez and Atty. Walter, in our telephone conversation (Wednesday, 11/17/10). We cannot consent. The mentioned station and its assets are already on lien with other borrowers. Point 5 should also be amended. For the same reasons. Therefore, the underlined lines should be deleted as shown below.**
    >   1. That if the Ortiz pastors cannot comply with the final payment due at the end of the 24-month term, an additional 12-month term will be granted with interim monthly

6

payments of $8,500 (eight thousand five hundred dollars) to the Council or Mission. In turn, in the first month of the extension, that is, in the 25th month, the Ortiz pastors will immediately proceed to put the station in question up for sale to fulfill the debt with the Council or Mission. The sale price will be established according to the market value estimated by an expert in the matter chosen by both parties, Council or Mission, and the Ortiz pastors."
**Exhibit 9**

41. All of Defendant's requests for changes in the Reimbursement Agreement and Recognition of Debt were accepted and accommodated. **Exhibit 7**

42. On February 10, 2010 prior to the execution of the Reimbursement Agreement and Recognition of Debt, Defendant executed as President of Genesis Broadcasting Network Corporation and as Manager of Genesis License Subsidiary, LLC a Purchase and Sale Agreement selling the WGES-FM, to Calvary Chapel of Kendall, Inc. for the purchase price of $2,500,000. **Exhibit 10**

43. When Defendants received the purchase price from the sale to Calvary Chapel of Kendall, Inc.,

    a. they did not forwarded the monies to Plaintiff to pay off its debt; and

    b. they mislead Plaintiff to belief that the FM Radio Station had a lien. See paragraph 40 of this Amended Complaint.

44. The WGES-FM Radio station sold on February 10, 2010 is the same station that Genesis Broadcasting Network Corporation sold to the Plaintiff on 1999.

45. On December 5, 2012 Defendant requested the monthly sum to be reduced to $5,000. **Exhibit 11**

46. On January 22, 2014 Defendant confirms his effort for the payment of the debt owed to the Plaintiff,

    "The best effort is being made. Believe me that all these years we have given high priority to this account. As our record with you reflects."

7

**Exhibit 12**

47. On April 14, 2014 Defendant confirms his effort for the payment of the debt owed to the Plaintiff,

"To tell you the truth, I cannot tell you precisely when we can resume payments. As I have previously informed you, our financial conditions have changed drastically, which is preventing us from maintaining the payment schedule.

Giving the conditions it is our best intention, **to comply with you as we have been doing for the past three years**. Before my I was terminated from Univision. I trust you will understand. Thanks a lot."
**Exhibit 13** (emphasis supplied)

48. On January 23, 2018 the Defendant requested the agreement of the Reimbursement Agreement and Recognition of Debt to be cancelled.  **Exhibit 14**

49. On February 3, 2019 the Plaintiff informed the Defendant that he must continue with the payments of the debt or to pay it off. **Exhibit 15**

50. On April 1, 2019 the Defendant wrote and sent a check in favor of the Plaintiff, in the amount of $1,000 as payment of pending account. **Exhibit 16**

51.  On June 13, 2019 the Defendant wrote and sent a check in favor of the Plaintiff, in the amount of $1,000 as payment of pending account. **Exhibit 17**

52. On July 29, 2019 the Defendant wrote and sent a check in favor of the Plaintiff, in the amount of $1,000 as payment of pending account. **Exhibit 18**

53. On September 19, 2019 the Defendant wrote and sent a check in favor of the Plaintiff, in the amount of $1,000 as payment of pending account. **Exhibit 19**

54. On October 18, 2019 the Defendant wrote and sent a check in favor of the Plaintiff, in the amount of $1,000 as payment of pending account. **Exhibit 20**

55. Plaintiff proffers a breach of contract claim under Puerto Rico law.

56. Defendants breached their obligations by not paying the amount dues. After they had recognized their obligation over the years through emails, letters, corporate resolutions, payments and Reimbursement Agreement and Recognition of Debt.

57. After October 2019, the defendant breached all its written and verbal agreements to repay.

58. The Plaintiff has made multiple extrajudicial collection efforts with the Defendants, but all its efforts have been unsuccessful.

59. The Defendants owes the Plaintiff the amount of one million three hundred thirteen thousand five hundred dollars ($1,313,500.00), which is due, liquid, and payable.

60. The Plaintiff requests the court to order the Defendants to satisfy the debt of $1,313,500.00, which is due, acknowledged by the Defendants, liquid and enforceable. It further requests the court to order the Defendants to pay costs, expenses, and attorney's fees.

**WHEREFORE**, the Plaintiff requests this Honorable Court to sustain the amended complaint and, consequently, order the Defendants to pay the Plaintiff the amount of $1,313,500.00, which is due, acknowledged by the Defendants, liquid, and enforceable. It further requests that the court orders the Defendants to pay the Plaintiff's costs, expenses, and attorney's fees.

**RESPECTFULLY SUBMITTED.**

In Caguas, Puerto Rico, on May 31, 2023.

>VICTOR GRATACÓS DIAZ LAW OFFICE
>Attorney for Plaintiff
>PO BOX 7571 CAGUAS, PR 00726
>P: (787) 746-4772
>F: (787) 746-3633
>E: bankruptcy@gratacoslaw.com
>
>*/s/ Víctor Gratacós Díaz*
>VICTOR GRATACOS DIAZ
>USDC- PR 127906
>
>*/s/ Rebeca Caquías Mejías*
>REBECA CAQUIAS MEJIAS
>USDC-PR 220810
>rebeca@rcmlawpr.com