IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CONCILIO MISION CRISTIANA FUENTE DE AGUA VIVA, INC., <br><br>**Plaintiff**, <br><br>v. <br><br>EDWIN LEMUEL ORTIZ-HERNANDEZ, MARIA DEL CARMEN ARROYO PANTOJAS, ET AL., <br><br>**Defendants.** | CIV. NO. 22-1206 (RAM) |

## OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is Edwin Lemuel Ortiz-Hernández's ("Defendant" or "Ortiz-Hernández") *Motion to Dismiss Amended Complaint and for Change of Venue* ("*Motion to Dismiss*" or "*Motion*"). (Docket No. 59). For the reasons set forth below, the Court **GRANTS IN PART** Plaintiff's *Motion*. This action shall be transferred to the Southern District of Florida.

### I. PROCEDURAL BACKGROUND

On March 3, 2022, Plaintiff Concilio Misión Cristiana Fuente de Agua Viva, Inc. ("Plaintiff" or "CMCFAV") filed its original *Complaint* with the Puerto Rico Court of First Instance, San Juan Superior Part, against Ortiz-Hernández, his wife Maria del Carmen Arroyo-Pantojas, and their conjugal partnership.[1] (Docket No. 7-

---

[1] Ortiz-Hernández is the only defendant in this case that has been served.

1). The *Complaint* alleged that on December 13, 1999, CMCFAV "made a three-million-dollar written loan" to Defendant, his wife, and their community property (the "1999 Contract") and that they still owed Plaintiff repayment of $1.313 million. Id. at 2-3.

On May 5, 2022, Ortiz-Hernández filed a *Notice of Removal*, removing the case to this Court pursuant to 20 U.S.C. § 1332. (Docket No. 1). He asserted that this Court may exercise diversity jurisdiction over Plaintiff's claims because: Plaintiff seeks relief in excess of $75,000; Plaintiff is organized under the laws of Puerto Rico and has a Puerto Rico address; and Defendant and his wife are citizens of Florida. (Docket Nos. 1 and 7-1).

On June 22, 2022, Ortiz-Hernández moved to dismiss for lack of personal jurisdiction and failure to state a claim, under Fed. R. Civ. P. 12(b)(2) and 12(b)(6), respectively. (Docket No. 11). In support, he argued he was not a party to the 1999 Contract in his personal capacity. Id. at 5-7. Alternatively, Ortiz-Hernández sought change of venue to the United States District Court for the Southern District of Florida. Id. at 7-8. In response, Plaintiff moved to remand. (Docket No. 13).

The Court denied both motions on January 27, 2023. (Docket No. 20). Regarding personal jurisdiction, the Court found that Plaintiff had "met its present burden under the *prima facie* standard for showing personal jurisdiction" but warned that the

Civil No. 22-1206 (RAM)                                                  3

Court was not prejudging "whether Ortiz-Hernández is personally bound by the 1999 agreement." Id. at 10, 17-18. Regarding venue, the Court reasoned that Ortiz-Hernández had "not made a case for transferring this action" under 28 U.S.C. § 1404(a). Id. at 16. Following the Court's ruling, Defendant answered the original *Complaint* on March 17, 2023. (Docket No. 29).

On May 31, 2023, Plaintiff filed an *Amended Complaint*. (Docket No. 42). The instant *Motion to Dismiss* was filed by Ortiz-Hernández on August 7, 2023. (Docket No. 59). Ortiz-Hernández contends the Court should dismiss the *Amended Complaint* for lack of personal jurisdiction or transfer venue to the Southern District of Florida. (Docket No. 59 at 5, 22). Plaintiff filed its *Opposition* on September 27, 2023. (Docket No. 69). CMCFAV argues this Court has personal jurisdiction over Defendant both because of a 1999 forum-selection clause and because there are enough contacts to establish specific personal jurisdiction. Id. at 9-15. Regarding venue, CMCFAV invokes 28 U.S.C. § 1391(c), which governs corporations, even though Defendant is sued in his personal capacity. Id. at 15-16.

Defendant's *Reply*, filed October 16, 2023, reiterates that the Court lacks personal jurisdiction and contends Plaintiff has waived opposition to Defendant's motion to change venue. (Docket No. 78). Plaintiff filed a *Surreply* on November 6, 2023, clarifying

its argument for why venue is proper in Puerto Rico. (Docket No. 84). Most significantly, CMCFAV alleges Defendant and his wife travelled to Puerto Rico to seek out and receive investment funds there. Id. at 2, 4.

## II. FACTUAL BACKGROUND[2]

From 1999 to 2006, Ortiz-Hernández and his wife, both pastors living in Florida, did ministry as members of CMCFAV, an organization based in Puerto Rico. (Docket No. 42 at 1-2). Defendant and his wife also ran an organization called Genesis Broadcasting Network Co. ("Genesis Broadcasting"). Id. at 2. On December 13, 1999, "Plaintiff and Genesis Broadcasting Network Co., represented by its President Edwin Lemuel Ortiz executed a Purchase and Sale Agreement for the sale to Plaintiff of Radio Station 90.9 FM." Id. at 2-3. From 1999 to 2003, CMCFAV made a series of payments to Defendant, totaling at least a million dollars. Id. at 2-5.

On July 8, 2006, the board of directors of Genesis Broadcasting discussed "efforts to seek financing for the repayment of the Council's investment." (Docket No. 42-8 at 1). The board resolved that its president, Ortiz-Hernández, would

---

[2] The following facts are derived from Plaintiff's *Amended Complaint* and its corresponding exhibits and are taken as true for purposes of the analysis herein. (Docket No. 42).

create a new corporation that could obtain credit to be used in repaying a certain debt "contracted with the Fuente de Agua Viva Council of P.R." (Docket No. 42-10 at 1).

On November 15, 2010, Plaintiff, Defendant, and his wife signed a letter (the "2010 Letter") agreeing to a payment plan by which Defendant and his wife would pay Plaintiff $1,700,000. (Docket Nos. 42 at 5 and 42-12 at 1-3). Defendant and his wife made multiple payments to CMCFAV, and the parties continued to negotiate the amounts. (Docket Nos. 42 at 6-8 and 42-27 at 1). CMCFAV alleges that "[a]fter October 2019," Defendant breached his "written and verbal agreements to repay." (Docket No. 42 at 9). Plaintiff seeks payment of $1,313,500. Id.

### III. LEGAL STANDARD

#### A. Transfer Under Section 1404(a) of the Judicial Code

Section 1404(a) of the Judicial Code of the United States provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). This section codified and liberalized the common law doctrine of *forum non conveniens*, which was embraced by the Supreme Court in Gulf Oil Co. v. Gilbert, 330 U.S. 501 (1947). In Norwood v. Kirkpatrick, the Supreme Court

reasoned that "Congress, by the term 'for the convenience of parties and witnesses, in the interest of justice,' intended to permit courts to grant transfers upon a lesser showing of inconvenience" than previously required under the doctrine of *forum non conveniens*. 349 U.S. 29, 32 (1955).

When determining whether to grant a transfer, the relevant private-interest factors to be examined by a court are:

> [T]he relative ease of access to sources of proof; availability of compulsory process for the attendance of unwilling and the cost of obtaining the attendance of willing witnesses; possibility of view of the premises; if view would be appropriate to the action; and all other practical problems that make trial of a case, easy, expeditious and inexpensive.

Gulf Oil Co., 330 U.S. at 508-509; *see also* Aquakem Caribe, Inc. v. Kemiron Atl., Inc., 218 F. Supp. 2d 199, 201-202 (D.P.R. 2002).

Public-interest factors also have a bearing on the transfer determination. Gulf Oil Co., 330 U.S. at 509. These factors have included "the trial judge's familiarity with the applicable state law, the local interest in adjudicating disputes at home; court congestion in the two forums, [and] the fairness of placing the burden of jury duty on the citizens of the state with greater interest in the dispute." NPR, Inc. v. Am. Int'l Ins. Co. of Puerto Rico, 242 F. Supp. 2d 121, 125 (D.P.R. 2003) (internal quotations omitted).

Civil No. 22-1206 (RAM)                                                    7

Considering the aforementioned factors, the decision to transfer under 28 U.S.C. § 1404(a) necessarily requires an "individualized, case-by-case consideration of convenience and fairness." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)).

B. **The Court's Discretion to Transfer**

The decision to transfer is within the Court's discretion. See Codex Corp. v. Milgo Elec. Corp., 553 F.2d 735, 737 (1st Cir. 1977). The Court need not determine the best venue but "merely a proper venue." Astro-Med v. Nihon Kohden of Am., 591 F.3d 1, 12 (1st Cir. 2009) (citing Uffner v. La Reunion Francaise, S.A., 244 F.3d 38, 42 (1st Cir. 2001)).

Moreover, courts may transfer an action under § 1404(a) **on their own initiative**. See Desmond v. Nynex Corp., 37 F.3d 1484 (1st Cir. 1994) ("It is well settled that a court may transfer a case *sua sponte* pursuant to 28 U.S.C. §§ 1404(a) . . . .") (citing Caldwell v. Palmetto State Sav. Bank, 811 F.2d 916, 919 (5th Cir. 1987)); Lead Indus. Assoc. v. Occupational Safety & Health Admin., 610 F.2d 70, 79 n.17 (2d Cir. 1979); Mobil Corp. v. S.E.C., 550 F. Supp. 67, 69 (S.D.N.Y. 1982).

C. **Forum-selection Clauses**

"When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to

the forum specified in that clause." Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas, 571 U.S. 49, 62 (2013). To determine whether there is a valid forum-selection clause, a court must first decide whether "the parties entered into a valid contract of which the forum selection clause was an agreed-to provision." Expedition Leather LLC v. FC Org'l Prods. LLC, 2013 WL 160373, at *1 (D.N.H. 2013) (quoting Provanzano v. Parker View Farm, Inc., 827 F. Supp. 2d 53, 58 (D. Mass. 2011)). The party asserting enforcement of a forum-selection clause has the burden of showing the parties agreed to it. *See* id. (citing Altvater Gessler-J.A. Baczewski Intern. (USA) Inc. v. Sobieski Destylarnia S.A., 572 F.3d 86, 89 (2d Cir. 2009)).

## IV. DISCUSSION

Ortiz-Hernández requests the Court dismiss this action for lack of personal jurisdiction or change its venue to the Southern District of Florida ("SDFL"). (Docket No. 59). He contends venue in the District of Puerto Rico ("DPR") is improper under 28 U.S.C. § 1391[3] and that transfer is therefore mandatory. Id. at 22-23. However, a separate statute, 28 U.S.C. § 1404(a), authorizes courts to transfer cases to a different venue "[f]or the

---

[3] The Court cautions Defendant that the text of 28 U.S.C. § 1391 has been amended since enactment of the version cited in Defendant's brief. *Compare* 28 U.S.C. § 1391(b) (2011), *with* (Docket No. 59 at 22) (citing 28 U.S.C. § 1391(a)).

convenience of parties and witnesses [and] in the interest of justice." As explained below, the Court finds it is in the interest of justice to transfer the present case to SDFL. *See* Desmond v. Nynex Corp., 37 F.3d 1484 (1st Cir. 1994) (recognizing a court's authority to transfer an action *sua sponte*); Gerena v. Korb, 617 F.3d 197, 205 (2d Cir. 2010) (noting the various reasons permitting transfer, including improper venue, want of jurisdiction, and convenience under § 1404(a)).

The Court begins its analysis by considering again whether Defendant is bound by a forum-selection clause, since a valid forum-selection clause would alter the § 1404(a) analysis. Atl. Marine, 571 U.S. at 62. The Court then considers whether it is in the interest of justice to transfer this case to SDFL.

### A. **The Forum-selection Clause in the 1999 Contract Does Not Govern This Case**

Plaintiff maintains this action must be litigated in DPR because of the forum-selection clause in the 1999 Contract. (Docket No. 42 at 2). However, CMCFAV has not met its burden of showing Defendant "entered into a valid contract of which the forum selection clause was an agreed-to provision." Expedition Leather, 2013 WL 160373, at *1 (citation omitted). In its *Amended Complaint*, Plaintiff admits the 1999 Contract is between CMCFAV and Genesis

Broadcasting. *See, e.g.*, (Docket Nos. 42 at 2-3 and 69 at 3, 6).[4] Indeed, the 1999 Contract itself, which Plaintiff attaches, names CMCFAV and Genesis Broadcasting as the two contracting parties. (Docket No. 42-6 at 1). Because Plaintiff's *Amended Complaint* shows Defendant was not a party to the 1999 Contract at the time it was signed, Plaintiff must assert some other reason for why Defendant is bound by the forum-selection clause.

Plaintiff appears to advance two theories. First, CMCFAV intimates that Defendant was treated as if he were a party to the contract, even though Defendant signed on behalf of Genesis Broadcasting. Plaintiff alleges Defendant "was paid personally" and that Defendant and his wife treated the radio station "as their own." (Docket Nos. 42 at 3 and 69 at 3). However, Plaintiff makes no legal argument for why these facts lead to the conclusion that Defendant is bound by the 1999 Contract.

Second, Plaintiff argues the 2010 Letter, which Defendant, his wife, and Plaintiff signed, is a modification of the 1999 Contract. (Docket No. 42 at 5). CMCFAV seems to suggest that by signing the 2010 Letter, Defendant became a party to the 1999

---

[4] This is different than what Plaintiff asserted in its original *Complaint*. *Compare* (Docket No. 7), *with* (Docket No. 42). There, Plaintiff stated that "[o]n December 13, 1999, in Carolina, Puerto Rico, the plaintiff made a three-million-dollar written loan to the defendant Edwin Lemuel Ortiz Hernández." (Docket No. 7-1 ¶ 4). But in its *Amended Complaint*, Plaintiff alleged that "the 1999 Purchase and Sale was executed between corporations." (Docket No. 42 at 3).

Contract. (Docket No. 69 at 5-7, 9-11). However, Plaintiff's argument for how an agreement between CMCFAV and Defendant could change an agreement between CMCFAV and Genesis Broadcasting is unsupported and flawed. Plaintiff urges that "the facts of the case," such as prior communications between Plaintiff and Defendant, "modified [the] original agreement." Id. at 5. But Plaintiff does not explain how. Plaintiff reiterates that the monies agreed to in the 1999 Contract were "personally delivered to Defendants" but fails to identify the relevance of this fact. Id. at 6. Finally, CMCFAV quotes the Court's previous holding that CMCFAV had met its *prima facie* burden of establishing personal jurisdiction by virtue of the forum-selection clause. Id. at 10-11 (quoting (Docket No. 20 at 7-9)). However, Plaintiff disregards that the Court's January 27, 2023, Order involved a different legal question (personal jurisdiction), a different burden (a *prima facie* showing), and different allegations (those in the original *Complaint*). *See* (Docket No. 20 at 3, 5-6).

Plaintiff's various arguments fall short of showing that the 1999 Contract's forum-selection clause should be enforced against Defendant. Moreover, after reviewing the exhibits attached to Plaintiff's *Amended Complaint*, the Court is unable to find any convincing evidence that the 1999 Contract was modified to include Defendant as a party. Accordingly, the Court finds that the forum-

selection clause in the 1999 Contract need not be considered when determining whether to transfer this case to a different venue.

### B. **This Action Could Have Been Brought in SDFL**

Without consent by the parties, transfer to another district court under § 1404(a) is permitted only if this case "might have been brought" there in the first place. 28 U.S.C. § 1404(a). In the case at bar, this would require the United States District Court for SDFL to have jurisdiction and for venue to be proper there. *See* Colon Perez v. Metan Marine, Inc., 2018 WL 1664697, at *8 (D.P.R. 2018) (citing Marel Corp. v. Encad Inc., 178 F. Supp. 2d 56, 58 (D.P.R. 2001)).

Both requirements are met. The fact that Defendant and his wife (a defendant that has not been served) live in SDFL[5] would have permitted venue there. *See* (Docket No. 42 at 1-2); 28 U.S.C. § 1391(b)(1). The SDFL district court would have had diversity jurisdiction because Plaintiff is resident of a different state[6] than Defendant, and the amount in controversy exceeds $75,000. *See* (Docket No. 42 at 1-2); 28 U.S.C. § 1332(a). Finally, the court would have had personal jurisdiction since Defendant and his wife are residents of that district. (Docket Nos. 42 at 1-2 and 29 at

---

[5] SDFL "comprises the counties of Broward, Dade, Highlands, Indian River, Martin, Monroe, Okeechobee, Palm Beach, and Saint Lucie." 28 U.S.C. § 89(c).

[6] The law treats Puerto Rico as a state for purposes of diversity jurisdiction. 28 U.S.C. § 1332(e).

1); Colon Perez, 2018 WL 1664697, at *8 (holding that transferee forum would have had personal jurisdiction over defendant who resided in that district). *See also* In re Genentech, Inc., 566 F.3d 1338, 1346 (Fed. Cir. 2009) ("There is no requirement under § 1404(a) that a transferee court have jurisdiction over the plaintiff . . .; there is only a requirement that the transferee court have jurisdiction over the defendants . . . ." (citing Hoffman v. Blaski, 363 U.S. 335, 343-44 (1960))).

C. **Private-interest Factors**

   **1. The convenience of the parties and witnesses**

On the one hand, Plaintiff's choice of venue is accorded a "strong presumption" in its favor. Cuadrado Concepción v. United States, 2019 WL 5847216, at *3 (D.P.R. 2019) (citing Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000)). That said, "[t]he most important factor in deciding whether to transfer an action is the convenience of the witnesses." Colon Perez, 2018 WL 1664697, at *9 (quoting Demers, Jr. v. Pilkington N. Am., Inc., 2010 WL 4683780, at *6 (D.N.H. 2010)).

In this case, most of the operative events took place in SDFL, which makes it likely most of the relevant witnesses are located there. *See* id. at *8. Moreover, courts give less weight to a plaintiff's choice of forum when the operative events occurred elsewhere. Id. SDFL is where Defendant and his wife signed the

2010 Letter. (Docket No. 42-12). It is the location, proposed by CMCFAV's then-Secretary, where Defendant and Plaintiff met in 2018 to negotiate payments. (Docket Nos. 42-14 at 2, 42-25 at 3-4 and 42-27 at 1).

SDFL is also the location of the property that led to the parties' dispute: a radio station in Homestead, Florida. (Docket No. 42 at 2-3). Many of the checks made out by Defendant to CMCFAV appear to have been written in SDFL. *See, e.g.*, (Docket Nos. 42 at 6 and 42-11 at 3). Also, it was in SDFL where Genesis Broadcasting's board of directors met and passed a resolution discussing a debt "contracted with the Fuente de Agua Viva Council of P.R." *See* (Docket Nos. 42 at 4, 42-8 at 1 and 42-10 at 1).

It is true that the 1999 Contract appears to have been signed in Puerto Rico and that CMCFAV's headquarters is located there. (Docket Nos. 42-6 at 3 and 42 at 1). Additionally, Plaintiff alleges in its *Opposition* and *Surreply* that Defendant travelled to Puerto Rico to request and receive money. (Docket Nos. 69 at 12 and 84 at 2, 4). None of these facts, however, tips the balance in favor of venue in DPR. As discussed above, Defendant is not a party to the 1999 Contract. The location of Plaintiff's headquarters is a neutral factor at best since Defendant and his wife reside in Florida. Finally, because Defendant alternated between acting in his personal capacity and representing Genesis Broadcasting,

Plaintiff's allegations that Defendant requested and received money in Puerto Rico fail to show how these events relate to the dispute in this case, *i.e.*, a claim against Defendant in his **personal capacity**.

**2. Relative access to sources of proof**

While electronic communication diminishes the relevance of geographic proximity to physical evidence, that "does not render this factor superfluous." Cuadrado Concepción, 2019 WL 5847216, at *3 (quoting In re Volkswagen of Am., Inc., 545 F.3d 304, 316 (5th Cir. 2008)). To the extent proximity aids in ease of access, evidence regarding the radio station, the decisions of Genesis Broadcasting, Defendant's finances, and the signing of the 2010 Letter will be easier to obtain in SDFL than in this district. Apart from evidence of communications between Plaintiff and Defendant, most of the support for Plaintiff's allegations will likely come from the radio-station dealings, the actions of Genesis Broadcasting, the 2010 Letter, and the payments from Defendant. As such, the Court weighs the location of that evidence more than the location of the 1999 Contract signing, the location of CMCFAV's headquarters, and Defendant's alleged trips to Puerto Rico.

### D. **Public-interest Factors**

#### 1. **Familiarity with the applicable law**

"[A] court's familiarity with the applicable law has . . . been recognized in this circuit as an appropriate factor in deciding a motion to transfer." Cuadrado Concepción, 2019 WL 5847216, at *3 (quoting Scholtens v. Gyrus Acmi, Inc., 2019 WL 2528377 (D. Mass. 2019), *R&R adopted*, 2019 WL 2565664). Here, Plaintiff asserts that Puerto Rico law governs its breach-of-contract claim. (Docket No. 42 at 2, 8-9). However, even if Plaintiff is correct, that would weigh only slightly against transfer. The issues in this case appear to be whether a contract exists between the parties and if so, whether Defendant breached it. Given the relatively straightforward nature of Puerto Rico law involved, a federal court in DPR would not be significantly more competent than a federal court in SDFL at resolving these issues. *See* BMJ Foods Puerto Rico, Inc. v. Metromedia Steakhouses Co., L.P., 562 F. Supp. 2d 229, 234 (D.P.R. 2008) (transferring case to the Northern District of Texas despite claim arising under Puerto Rico's Act 75 dealership law).

#### 2. **Court congestion**

The most recent caseload statistics prepared by the Administrative Office of the U.S. Courts show that during the 12-month period ending March 31, 2023, SDFL had roughly 209 cases

pending per district court judge, compared to DPR's roughly 230 cases per judge.[7] Because the individual caseloads of judges in either district is roughly comparable, the factor of court congestion is neutral as to whether the instant case should be transferred.

### 3. Local interest and burden of jury duty

Considerations of local interests in adjudicating disputes at home weigh in favor of transferring this case to SDFL. The claims in this lawsuit stem from the financing, construction, and operation of a radio station in Homestead, Florida. (Docket No. 42 at 2-3). At least one Florida bank, Suntrust Bank Miami, was allegedly involved. Id. at 3. The 2010 Letter, arguably the most important evidence of Defendant's alleged debt, was signed before a Florida notary. (Docket No. 42-12). This means citizens in SDFL have a stronger interest in deciding this case than do citizens of Puerto Rico. In turn, that greater interest makes it fairer to burden citizens in Florida with jury duty for this case than citizens in Puerto Rico.

---

[7] See Table C-1 -- U.S. District Courts -- Civil Federal Judicial Caseload Statistics (March 31, 2023), U.S. Courts, https://www.uscourts.gov/statistics/table/c-1/federal-judicial-caseload-statistics/2023/03/31 (last visited Jan. 26, 2024); Table D Cases -- U.S. District Courts -- Criminal Federal Judicial Caseload Statistics (March 31, 2023), U.S. Courts, https://www.uscourts.gov/statistics/table/d-cases/federal-judicial-caseload-statistics/2023/03/31 (last visited Jan. 26, 2024).

## V.  CONCLUSION

After reviewing the parties' submissions regarding Defendant's *Motion to Dismiss*, as well as the record as a whole, the Court finds that transferring this case *sua sponte* is appropriate under 28 U.S.C. § 1404(a). Plaintiff is unable to meet its burden to enforce the 1999 Contract's forum-selection clause, and most of the operative events in this case occurred in SDFL. After considering both private- and public-interest factors, the Court concludes it is in the interest of justice to transfer this case to SDFL.

For the foregoing reasons, the Court **GRANTS IN PART** Ortiz-Hernández's *Motion to Dismiss* at Docket No. 59. The Clerk of Court shall **TRANSFER** this case to the United States District Court for the Southern District of Florida. This case is now closed in the District of Puerto Rico for statistical purposes.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 29th day of January 2024.

                              s/Raúl M. Arias-Marxuach
                              UNITED STATES DISTRICT JUDGE